By the Comtr.
Boswohth, J.
That each defendant is a competent witness for his codefendant, in an action of tort, has been expressly determined by the Court of Appeals. (Beals v. Finch, et al. 1 Kernan’s R. 128.)
That action was tried after § 397 of the Code was amended by *59 the act of 1851. The decision in Beals v. Finch, is therefore conclusive, as to the right of each defendant, in this action, to examine his codefendant as a witness in his own behalf. The relevancy or competency of any evidence proposed to be given by a codefend-ant, can only be determined at the trial. In this case the witness was absolutely excluded, and for aught the court can know, it was in the power of each, to prove by the other, matters pertinent and material to the issues joined in the action. There must, therefore, be a new trial, because neither defendant was permitted to testify for the other.
The most important question in the cause, as it is now presented, is that which relates to so much of the charge to the jury, as stated the liability of the defendants resulting from not notifying the plaintiff of the defendants’ intention to interfere with the party, wall. The charge as given, withdrew from the consideration of the jury, the question, whether the repairs were done in a skilful and careful manner, so as to avoid any unnecessary injury. It assumed that the work had been done with care and skill. The jury were instructed “that, if they should find that the plaintiff had no notice or knowledge of the intention of the defendant to move or interfere with the party wall in question, and that the plaintiff by having had notice, could have saved himself from injury, the defendants, notwithstanding they might have done the work in question, with all skill and diligence, are liable to the plaintiff for any injuries sustained by him, in consequence of not having given him notice of the intended alterations.”
We all concur in the opinion, that there is nothing in this part of the charge of which the defendants can complain. We have no doubt, that in any view of the rights and liabilities of the parties that can properly be taken, the plaintiff was at all events entitled to notice, and if that was not given, he is entitled to recover such damages, as upon the receipt of it, he might have avoided by reasonable care and precaution to protect and support his building.
It is obvious, however, that this rule may not be the one by which the liabilities of the parties must be tested on the facts, as they may possibly appear on a new trial. A notice to the plaintiff may possibly be proved by testimony, available to both defendants. And the facts may appear to be such, as will present *60 the question, whether either defendant had any right to interfere with the wall at all, without the plaintiff’s consent, unless he could do so without injury to the plaintiff’s building.
Although the plaintiff and Del Yecehio severally owned in fee, so much of the wall as stood upon his own lot, yet if each had an easement in the residue of the wall, for the support of his own house, or if the wall was one coming within the proper description of a “party wail,” it would seem to be well settled, that neither can remove it without the consent of the other.
It is not essential in order to constitute a division wall such a party wall, that the owners of the adjoining lots should own the wall as tenants in common, nor that they should own in undivided moieties the land on which it stands. Nor is it necessary that there should be a covenant between the owners of the adjoining lots, severally binding them, their heirs and assigns, that the division' wall shall be and remain a party wall. If the owners of adjoining lots on building upon them, erect by common consent, a division wall partly on the land of each, at their joint' expense, for the purpose of supporting both buildings, and which is essential to such support, and so use it for over twenty years, the wall becomes a party wall within the proper meaning of that term. So if one person owns both lots and erects buildings on both, with a wall standing partly on each lot, for the purpose of supporting both buildings, and which is necessary for their support, and subsequently, while that wall is continuing to be so used, conveys one house and lot by metes and bounds, and by boundaries, one of which runs through the centre of said wall, the grant will carry not only an absolute title to the premises specifically conveyed, but will also pass as an appurtenance to the grant, an easement in the residue of the division wall, for the support of the house granted.
We think a reference to adjudged cases will show that these principles are well settled.
In Campbell v. Mesier, (4 J. Ch. R. 334,) Chancellor Kent decreed that the owner of a lot on which a party wall, in part, stood, should contribute to the expense of erecting a new wall in place of the old one, which had become so decayed and ruinous as to be incapable of being partially removed and repaired. It does not appear in the report of that case, under what circum *61 stances or agreement, verbal or written, that party wall was erected. But it does appear, that the owners of the two contiguous lots did not own the land on which it stood, in undivided moieties, but that each owned in severalty a part of such land. As no allusion is made to any such fact, it is just to infer, that the rights and liabilities of the parties did not depend upon any covenant relating to the wall, and running with the land. The wall is spoken of and treated as an ancient walk What is meant by an ancient wall will be considered presently.
In Sherrod v. Cisco, although unnecessary to the decision of that case, yet without any apparent doubt as to its accuracy, Justice Sandford declared that neither party could remove such a wall without the other’s consent. If he could not do that, it is obvious that without the other’s consent he could not do any thing to it which would unfit it for the purpose for which it was built, and had been continuously used.
In Brown v. Pentz, (in the Court of Appeals,) McCoun, J., the only judge, of those voting for affirmance, who is known to have written an opinion, says that “ the principles which govern between the owners of walls built under that act, (14 Geo. III., ch. 75,) in relation to their rights and liabilities, are equally applicable where a wall of that description has been erected by agreement between the 'owners of adjoining lots. They are principles of natural justice which result from the nature of the interest or ownership in a party wall. Such a wall, standing partly on the land of one, and partly on the land of the other, does not, it is true, constitute a tenancy in common between them, because each owns in severalty to the dividing line of their respective lots, and therefore each of the house owners has a separate property in a moiety of the party wall, and an easement for the support of his house in the other moiety; so that it has been held that one of them may maintain trespass against the other for pulling down so much of the party wall which stands upon his land. (Matts v. Hawkins, 5 Taunt. 20; Gibbons on Dilapidations, 4,110 ; vol. ii., Leg. Ob., p. 24.)
It may be said that these remarks were obiter dicta, and were not pertinent to any question necessary to be decided in the proper determination of that case. Still the propositions are stated without qualification, and, so far as is known, without the *62 dissent of any member of tbe court, and as being in conformity ■with the principles of natural justice and well settled law. The decisions to which he referred speak for themselves.
The case of Bradbee v. Christ's Hospital, 4 Man & Granger, 714, 760, 761, is in point upon this question. There was a reference in that case to a barrister, of various issues, who made a special award. He found (among other things) the plaintiff’s messuage to be an ancient one, and that “the carelessness, negligence and unskilfulness of the defendants, their agents and workmen, in and about the underpinning of the party wall, consisted in their underpinning the said party wall partially, and not underpinning the whole of the said wall, whereby the plaintiff’s house' sunk and sustained damage.”
The court said: “ Both parties seem to have assumed before the arbitrator, that the party wall belonged one half to the plaintiff and the other half to the defendant, and he was not requested to state any question for the opinion of the court upon that point. He has, according to the request of the parties, raised a question as to the liability of the defendants in respect of injury arising from their underpinning only their own half’ of the party wall, by stating that the carelessness, negligence and unskilfulness' for which he has given damages, consisted in their underpinning their own half of the party wall only. How, there is not, amongst the.numerous objections taken to this award, any one distinctly complaining of that assessment of damages. Assumr ing, however, that the point is raised for the consideration of the court, we are of the opinion that the defendants had no right to undeiprin ’the party wall, either partially or wholly, unless that could be done without injuring the plaintiff’s house. It may, indeed, be doubtful whether the plaintiff had a several interest in that half of the wall which was next to his house, or whether he and the defendants were tenants in common of the whole; but, in either event, an action on the case was maintainable against the defendants in respect of the injury which resulted from their mode of dealing with it.” See Com. Dig. Estates, K. 8; Cubitt v. Porter, 8 B. & C., 257; 2 M. & R., 267.
According to the decision just referred to, each of the owners » of • two contiguous lots, having an .ancient party wall erected . partly on each lot, for the purpose of sustaining the houses stand *63 ing on both, has an easement fox the .support of Ms own house in so much of the wall as stands on the lot of the other. Neither has any right to underpin the party wall, either partially or wholly, unless it can be done without injuring the other’s house. And if underpinned in such a manner as to injure it, the one doing the act is liable for the injury.
This corresponds with the rule declared in Sherrod v. Cisco, that neither can pull down such a wall without the other’s consent, and is in accordance with the law on this point, as stated by McCoun, J., in Brown v. Pentz.
TMs wall has been erected and used as a wall to support, both buildings for a period of thirty-three years. When built, both houses and the lots on wMch they stood belongéd to the same person. This'wall was essential to the support of each building.
Story, J., in the case of the United States v. Appleton, 1 Sum. 500, says: “ The general rule of law is, that when a house or store is conveyed by the owner thereof, every thing then belonging to, and in use for the house or store, as an incident or appurtenant, passes by the grant. It is implied from the nature of the grant, unless it contains some restriction, that the grantee shall possess the house in the manner, and with the same beneficial rights as were then in use and belonged to it.” “Whatever are properly incidents and appurtenances of the grant, will pass without the word appurtenances.” (Id. 503.)
One incident to the house, and indispensable to its support and enjoyment, and an integral part of it in a case like the present, would be the party wall which hath been built for the express purpose of sustaining it. The rights of such a grantee,' aS between him and Ms grantor, or any one to whom he might subsequently convey the other house and lot, would seem to be as extensive and absolute, as those of either of the owners of two contiguous lots who erect a party wall partly on the lot of each, by the consent of both and at their joint expense, for the purpose of supporting buildings on both lots, and use it for such purpose during a period of time sufficient, where the possession is adverse, “to perfect a title. A party wall built to be used as such, and in fact used as such for more than twenty years, by the express permission and continuous acquiescence of the owners of the 'land on wMch it stands, is an ancient wall, within the meaning of the word *64 “ ancient,” as applied to lights, ways, foundations, &c., which are treated in law as' being ancient lights, ways and foundations. Wright v. Freeman, (5 Harris & J. 477.)
Accordingly, Park B., in Hide v. Thornborough, (2 Car. and Kir. 250,) held, that “.if the plaintiff has enjoyed the support of the land of the defendant for twenty years to keep up his house, and both parties knew of that support, the plaintiff had a right to it as an easement, and the defendant could not withdraw that, support without being liable in damages for any injury that might accrue to the plaintiff thereby.” That was a case where the plaintiff and defendants owned adjoining lands, and the house of the plaintiff had for more than twenty years been supported by the adjoining land of the defendant, who dug a foundation for some intended buildings so near .the house of the plaintiff that it fell.
Chancellor Walworth, declared the same rule in Lasala v. Holbrook, (4 Paige R., 173.) After deciding that “where a person, in the exercise of ordinary care and skill, in making an excavation for the improvement of his own lot, digs so near the foundation of a house on the adjacent lot as to cause it to crack and settle, he will not be liable for the injury, if such excavation would not have injured the lot in its natural state,” he proceeds to say: “There is another class of cases, however, where the owner of a building on the adjacent lot is entitled to full protection against the consequences of any new excavation or alteration of the premises intended to be improved, by. which he may be in any way prejudiced. These are ancient buildings, or those which have been erected upon ancient foundations, and which by prescription are entitled to the special privilege of being exempted from the consequences of the spirit of reform operating upon the owners of the adjacent lots; and also those which have been granted in their present situation by the owners of such adjacent lots, or by those under whom they derive their title.” Palmer v. Fleshees, (1 Sid. 167;) Cox v. Matthews, (1 Vent. 237-239;) Story v. Odin, (12 Mass. Rep. 157;) Brown v. Windsor, (1 Cromp. & Jer. Rep. 20;) Some of the cases cited by the Chancellor, relate to the obstruction of lights, and are, therefore, authorities for his propositions, only so far as the two subjects are analogous. But Brown v. Windsor, is a case in point.
*65 • The rules to be extracted from all tbe cases, and from tbe dicta of judges of what tbey regarded as undoubted law, so far as tbey are necessary to .be stated to meet tbe questions tbat may arise in this case, would seem to be these:
I. If tbe owner of two adjoining lots erect buildings upon them, witb a wall partly on eacb, to be used as a support to botb buildings, and wbicb is necessary to fumisb sucb support, and wbicb is used for tbat purpose from tbe time of its erection, a conveyance of either bouse and lot witb its appurtenances, grants an easement for tbe support of tbe bouse so conveyed, in so much of tbe wall as stands on tbe other lot.
TT. After sucb a grant and a continued use of sucb party wall to support botb buildings more than twenty years, neither can remove tbe wall, nor so deal witb it as to render it an insufficient support for tbe other’s building without bis consent. If be does, be is bable for tbe injury caused thereby.
IU. If either wishes to improve his own premises before tbe party wall has become ruinous, or incapable of further answering tbe purposes for whieh it was erected, be may underpin the foundation, sink it deeper, and increase within the limits of his own lot tbe thickness, length, or height of tbe party wall, if be can do so without injury to tbe building on tbe adjoining lot. And to avoid causing sucb injury, be may shore up and support tbe original party wall, a reasonable time, to excavate and place a new underpinning beneath it.
IV. But be cannot interfere witb it in any manner, unless be can do so without injury to tbe adjoining building, or without tbe consent of tbe owner of sucb building. Whether in sucb a case, be can raise tbe whole party wall higher, or whether any additional elevation must be wholly within tbe limits of bis own lot, it is unnecessary now to decide.
Unless these rights are necessarily incident to sucb an ownership in sucb a party wall, it is difficult to say on wbat principle either owner has any valuable right or privilege in it. If either may pare off so much of tbe wall as is upon bis own lot, notwithstanding it may so weaken tbe residue of tbe wall tbat it cannot stand, or if either may excavate under so much of tbe wall as is upon bis own land, though tbe necessary consequence be, tbat so much of tbe wall as is on tbe other lot will fall; then it follows *66 that a purchaser from the owner of both, does not acquire by a grant of one house and lot, with the appurtenances, a right to the use of all that is absolutely indispensable to the enjoyment and security of the house built, although it was in use as a part of the house at the time the house was granted.
If either may, as a matter of strict right, take down or pare off so much of the wall as is on his own lot, although the residue must necessarily fall, or will be undeniably insufficient to support the adjoining building, then it is out of the power of the latter to protect himself, even if he have notice. Notice may enable him to shore up his building, until he can erect a new wall wholly on his own land, but it will not enable him to sustain his own half of the wall; and make it strong enough to uphold his building, when it is itself incapable of standing after the other half has been pared off or taken down.
The owner of a lot, having a building with independent walls standing wholly upon it, is entitled to notice from the owner of an adjoining lot, who intends to build on the latter, and so improve it, as to make it necessary for the security of the former house, that it should be shored up and supported, during the progress of the work. The one giving the notice, even in such a case, is also bound to exercise care and skill in improving his own lot, and for any injury resulting to the other from a breach of that duty, he will be liable.
I see no middle course in such cases, between holding, either that one of the owners of two adjoining buildings, having such a party wall for the support of both, cannot remove or impair the stability of the wall without the other’s consent; or that each has as absolute and exclusive a dominion over so much of the wall as stands on his own lot, as he would have had, if it had been erected as a separate and independent wall. If the latter rule be adopted, it must also be held, that although the owners of adjoining lots erect buildings upon them, with a party wall for the support of both, standing, by common consent, one half on each lot, and by agreement built at joint expense; yet, the day after they are completed, or after the wall has stood and been used, as a party wall, long enough to justify the presumption of a grant where the possession is adverse, either may take down so much *67 of suet wall as is on Ms own lot, alttougt as an inevitable consequence, tte otter talf must fall.
Tte latter doctrine is repugnant to natural justice and equity, and I have not found any authorities wtict sanction it. Tte contrary doctrine is in accordance witt tte most obvious principles of justice and good faith, and witt express decisions, and is supported by tte opinions of eminent jurists expressed wittout tesitation or qualification, and does not interfere witt eitter parly in making any kind of improvements upon tis own lot, wMct do •not involve a breact of duty to, or tte practice of bad faitt towards the otter.
Tte case now before us, does not stow, whether Isaac Lawrence died seized of the house and lot now owned by Del YeccMo, or whether he conveyed it in tis lifetime. If he conveyed it in tis lifetime, the terms of tte grant may have a controlling influence upon the question whether this wall is to be regarded as a party wall, witMn tte meaning of tte decisions to wMct reference has been made. Tte terms of tte grant may be suet as to preclude those claiming it, and also tis grantees of 496 Broadway, from claiming any easement in so much of tte wall as is not conveyed to them respectively, or they may expressly declare it to be a party wall — or the premises witt the appurtenances may be conveyed by metes and bounds wtict run one of the boundary lines through the centre of the wall.
Isaac Lawrence died seized of the lot now owned by tte plaintiff. It was first conveyed to the plaintiff and John J. Phelps, in January, 1844, by tte administrator of the deceased. By what authority the conveyance was made does not appear. If this wall stall appear not to be a party wall, within the proper meaning of that term, still the plaintiff would be entitled to notice of the intended alterations — or if due notice was not given, to recover suet damages as he was subjected to by reason of not having tad notice.
If it stall appear to be suet a party wall, and if the alterations made by the defendants were made wittout tte plaintiff’s consent, tte defendants will be liable to suet damages as have been- occasioned by their manner of dealing witt tte wall.
Tte jury, besides assessing tte damages resulting from the injuries to tte front and rear walls of tte plaintiff’s house at $850, *68 also assessed tlie damages for the erection of a new wall at the sum of $600.
With reference to the last item, as the case now appears, we cannot give any more definite direction than to say, that if the plaintiff shall show himself entitled to recover, he will be entitled to such sum as will put him in the state in which he was before the injury.
If the wall shall be made to appear to be a party wall, it may also appear that as it is now left, it is in a condition to support securely the plaintiff’s building, and that the cost of properly inserting the beams, and restoring the house to as good a condition as it was in before the alterations were made, will be much less than the cost of erecting a new wall. What particular directions should be given to enable the jury to find the proper compensation, can be more accurately stated at the trial, when the facts may appear quite different from those presented in the case now before us.
If the plaintiff is entitled to recover, he is entitled to be indemnified to the full extent of the injury occasioned to the reversion.